**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **STEVEN J. CAUCHI**, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. Action No.: 15-8255 (FLW)(DEA) |
| | : | |
| **DEAD SERIOUS PROMOTIONS LLC** | : | OPINION |
| **DEAD SERIOUS MMA CAGE RENTAL, LLC**, **FRANCISCO PEREZ** doing business as **THE DEAD SERIOUS GROUP** doing business as **DEAD SERIOUS MMA PROMOTIONS**, **LOURDES PEREZ** doing business as **DEAD SERIOUS FIGHT GEAR**, and **MATTHEW KIRCHHOF** doing business as **DEAD SERIOUS EVENT GROUP** doing business as **TEAM DEAD SERIOUS CLOTHING** | : : : : : : : : : : | |
| | : | |
| Defendants. | : | |

Plaintiff Steven J. Cauchi ("Plaintiff") brings this trademark infringement suit against Defendants Dead Serious Promotions LLC, Dead Serious MMA Cage Rental, LLC, Francisco Perez, Lourdes Perez, and Matthew Kirchhof (collectively, "Defendants") for alleged infringement of his registered trademark for the service mark DEAD SERIOUS. Presently, Defendants move for summary judgment, prior to the commencement of discovery, on the basis that their prior use of the DEAD SERIOUS mark in New Jersey and Pennsylvania bars Plaintiff from bringing trademark infringement claims in these markets, and moreover, there is no likelihood that consumers will confuse the parties' products. Plaintiff opposes this Motion. For the reasons set forth below, Defendants' Motion for Summary Judgment is denied without prejudice.

1

I. **Procedural and Factual Background**

Because the Court is considering the facts in the context of Defendants' Motion for Summary Judgment, the Court views the facts in the light most favorable to Plaintiff. However, the Court notes that because Defendants' Motion was filed before any discovery was conducted, the evidentiary record presently before the Court is extremely scant.

Plaintiff is an Australian citizen and the sole proprietor of numerous businesses, including the Hot Shots Pro Shop, which sells paintball supplies, clothing, and accessories worldwide through both wholesale and retail channels. Aff. of Steven Cauchi ("Cauchi Aff.") ¶¶ 1-2. According to Plaintiff, as early as 1998, he has continuously manufactured and sold hats, caps, t-shirts, gloves, and other items of clothing and accessories under the DEAD SERIOUS name. *Id.* at ¶ 3. On October 4, 1998, Plaintiff filed an Australian trademark application for use of the DEAD SERIOUS mark with clothing, which was approved for registration effective as of the filing date. *Id.* at ¶ 5. Although Plaintiff originally sold only paintball-themed products, primarily in the Australian market, he eventually expanded his DEAD SERIOUS product line to include other sports and general athletic wear, and began to market and sell his products worldwide. *Id.* at ¶¶ 4-7. Plaintiff claims that "[s]ince well before January 2005," he has been marketing and selling generally sports-themed DEAD SERIOUS clothing and accessories in international markets, including the United States. *Id.* at ¶¶ 6-7.

Defendants appear to be affiliated through a New Jersey-based enterprise that sells tickets to mixed martial arts ("MMA") events, fight gear, MMA cage rentals, DJ services, and clothing under the brand name DEAD SERIOUS.[1] Aff. of Francisco Perez and Louis Perez ("Perez Aff.")

---

[1] Defendants admit in their Answer that "Dead Serious Event Group," "Team Dead Serious Clothing," "Dead Serious Fight Gear," and "The Dead Serious Group" are unregistered fictitious

2

¶ 1. Defendants claim that they have been continuously selling their products and services under the DEAD SERIOUS name since 2006.[2] Perez Aff. at ¶ 2. As evidence of this, Defendants point to the fact that Defendant Lourdes Perez registered the trade name "Dead Serious Fight Gear" with the State of New Jersey on September 10, 2007. Aff. of David Ludwig ("Ludwig Aff.") Ex. 8. Additionally, Defendants claim that they "do not sell their goods and services in any other markets except for New Jersey and Philadelphia, Pennsylvania." Defs.' Statement of Undisputed Facts ¶ 6. However they submit no evidence in support of this assertion. And, to the contrary, Plaintiff alleges that because Defendants' websites are not geographically restricted, their products are marketed to customers throughout the United States. Ludwig Aff. at Exs. 9-16.

On April 23, 2008, Plaintiff filed an application for international registration of the DEAD SERIOUS mark in those markets where he was actively selling his DEAD SERIOUS products, including the United States, the European Union, China, Japan, and the Russian Federation. Cauchi Aff. at ¶ 7. Plaintiff's application was approved, resulting in his current ownership of U.S. Trademark Registration No. 3,567,971 for use of the DEAD SERIOUS mark in connection with clothing.[3] See Ludwig Aff. at Exs. 1-2; *id.* at ¶ 3 and Exs. A-B; *see also* Answer ¶ 1 (admitting

---

business names of Defendants Francisco Perez and Lourdes Perez. Answer ¶ 4. However, Defendants deny that Defendant Matt Kirchhof is an owner or partner of any company that promotes its products under a DEAD SERIOUS mark. *Id.* On this Motion for Summary Judgment, neither party has presented evidence demonstrating the exact nature of the relationship between Defendants. And indeed, in their Statement of Undisputed Facts, Defendants refer to all Defendants collectively, and do not identify the different roles of each individual defendant. *See* Defs.' Statement of Undisputed Facts.

[2] Plaintiff does not concede that Defendants have been selling products and services under the DEAD SERIOUS mark since 2006. However, without discovery, he is unable to submit any evidence to the contrary at this juncture.

[3] The categories of clothing encompassed by Plaintiff's trademark are:

> [c]lothing, namely, tops, pants, t-shirts, shirts, close fitting garments for wind protection, namely, wind jackets, shorts, track suits, jumpers, jerseys, polo tops,

3

Plaintiff's ownership of this U.S. Trademark). On September 24, 2011, Defendants filed their own U.S. Trademark Application Serial No. 85/431,167, seeking registration of the mark DEAD SERIOUS INC. FIGHT GEAR. See Ludwig Aff. at Ex. 5; *see also* Answer ¶ 16. In examining Defendants' application, on January 13, 2012, the U.S. Trademark Office issued an office action finding that "[r]egistration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 3567971," i.e. Plaintiff's registered DEAD SERIOUS mark. Ludwig Aff. at Ex. 6; *see also* Answer ¶ 17.

In 2011, Plaintiff expanded his DEAD SERIOUS brand to include entertainment services, events, online entertainment broadcasts, and related services, primarily in the field of sports. Cauchi Aff. at ¶ 8. Consequently, on November 22, 2011, Plaintiff filed Australian and international trademark applications, including a United States application, for the DEAD SERIOUS mark in connection with these services. *Id*. Plaintiff's applications were approved, resulting in his current ownership of U.S. Trademark Registration No. 4,284,376 for use of the DEAD SERIOUS mark in connection with various entertainment and related services.[4] Ludwig

---

singlets, jumpers, jackets and wind cheaters; footwear, namely, socks, shoes, boots, running shoes, sandals, casual footwear, sporting footwear, outdoor footwear; hats; caps and visors; hats; bandanas; head wraps; do-rags; beanies; head covers, namely, head scarves; neck covers, namely, scarves and neck wraps.

Ludwig Aff. at Exs. 1-2

[4] These services include:

[a]rranging of musical concerts; entertainment, namely, participation in sporting events and recreational events; entertainment, cultural or sporting event ticket booking and reservation services for loyal customers and frequent buyers; event management services in the nature of organization of educational, entertainment, sporting or cultural events, namely, outdoor adventure sports, indoor sports, recreation activities and sporting activities; information services relating to entertainment; production of audio recording; providing information, including online, about education, outdoor adventure sports, indoor sports, recreation activities and sporting activities,

Aff. at Exs. 3-4; Cauchi Aff. at ¶¶ 8-9 and Ex. B; *see also* Answer ¶ 2 (admitting Plaintiff's ownership of this U.S. Trademark).

On March 21, 2012, Defendant Lourdes Perez filed a Petition for Cancellation of Plaintiff's registered DEAD SERIOUS mark with the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("PTO"). Ludwig Aff. at Exs. 6-7; *see also* Answer ¶ 18. The Petition for Cancellation asserted that Defendant Lourdes Perez had priority of use of the disputed mark and that there was a likelihood of customer confusion regarding the parties' DEAD SERIOUS products. Ludwig Aff. at Ex. 7. However, on April 30, 2013, his Petition for Cancellation was dismissed with prejudice by the TTAB for failure to prosecute. Ludwig Aff. at Ex. 7. Following the dismissal, Plaintiff alleges that Defendants nonetheless continued to sell infringing clothing products and entertainment services under the DEAD SERIOUS name. Ludwig Aff. at Exs. 9-16.

---

entertainment, sporting and cultural activities; provision of entertainment services via an online forum, namely, providing an inperson entertainment forum in the field of outdoor adventure sports, indoor sports, recreation activities and sporting activities; television entertainment, namely, television news shows, ongoing television programs in the field of outdoor adventure sports, indoor sports, recreation activities and sporting activities; video entertainment services, namely, providing video podcasts, film clips, video clips or segments in the field of outdoor adventure sports, indoor sports, recreation activities and sporting activities; sports education services, namely, outdoor adventure sports, indoor sports, recreation activities and sporting activity training, displays or instruction; production of webcasts in the field of outdoor adventure sports, indoor sports, recreation activities and sporting activities; non downloadable electronic publications in the nature of news articles, feature clips, sporting events, sporting publications in the field of current event news; advisory services relating to the organization of sporting events; providing a website featuring sporting information. electronic publication of electronic newspapers featuring information on a wide range of topics accessible via a global computer network; provision of information about sports; sports information services.

Ludwig Aff. at Exs. 3-4.

On November 24, 2015, Plaintiff filed the instant action, alleging federal trademark infringement under the Lanham Act, federal false advertising and false designation of origin under the Lanham Act, trademark infringement under New Jersey common law, and unfair competition under New Jersey common law. On December 15, 2015, Defendants filed an Answer. The same day, Defendants filed the instant Motion for Summary Judgment on all counts of the Complaint based on their alleged prior use of the DEAD SERIOUS mark in New Jersey and Pennsylvania, as well as lack of likelihood of customer confusion. No discovery has been conducted in the instant action.

## II.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ .P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

7

**III.     Analysis**

Plaintiff argues that pursuant to Fed. R. Civ. P. 56(d), the pending Motion for Summary Judgment has been filed prematurely, and should be denied, without reaching the merits of Plaintiff's claims. "It is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Shelton v. Bledsoe*, 775 F.3d 554, 565-66 (3d Cir. 2015) (quotations and brackets omitted). Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). District courts usually grant properly filed requests for discovery under Rule 56(d) "as a matter of course." *Shelton*, 775 F.3d at 568. Indeed, "[i]f discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law." *Shelton*, 775 F.3d at 568.

Here, contrary to the requirements of Rule 56(d), Plaintiff has failed to submit an affidavit or declaration setting forth "what particular information [is] sought; how, if disclosed, it would preclude summary judgment; and why it has not been previously obtained." *Shelton*, 775 F.3d at 568. Instead, in his response to Defendants' Statement of Material Facts, Plaintiff highlights those disputed material facts that require additional discovery. And, in his opposition brief, Plaintiff argues that the pending Motion is premature under Rule 56(d) because no discovery has been conducted. While such submissions technically do not meet the requirements of Rule 56(d), Plaintiff has nonetheless demonstrated that there are outstanding disputes of material fact in this matter that require discovery.

8

Defendants advance two arguments in support of their Motion: (1) Defendants claim that their use of the DEAD SERIOUS mark in New Jersey and Pennsylvania predates both Plaintiff's use of the mark in these areas and Plaintiff's federal registration of the mark, and therefore, as the junior user, Plaintiff is barred from bringing a trademark infringement claim against Defendants in New Jersey and Pennsylvania;[5] and (2) Defendants assert that there is no likelihood of customer confusion between the parties' products,[6] because Plaintiff only sells his products in Australia, not New Jersey or Pennsylvania, and Defendants sell MMA-themed clothing and gear, while Plaintiff sells paintball-themed clothing and gear. However, even assuming that Defendants' legal arguments have merit,[7] Plaintiff has clearly shown that the key facts upon which Defendants' arguments rest are in dispute.

First, regarding which party is the senior user of the DEAD SERIOUS mark in New Jersey and Pennsylvania, Plaintiff submits an affidavit claiming that he began marketing and selling his DEAD SERIOUS products in the United States in 2005. Cauchi Aff. at ¶¶ 6-7. On the other hand, Defendants submit an affidavit claiming that they began marketing and selling their DEAD

---

[5] The Court notes that this argument does not address whether Plaintiff may bring trademark infringement claims against Defendants for use of the DEAD SERIOUS mark outside of New Jersey and Pennsylvania. As stated above, there is a question of fact as to whether Defendants sell and market products under the DEAD SERIOUS name in other areas of the United States.

[6] To prevail on claims for federal trademark infringement, 15 U.S.C. § 1114(1), or federal unfair competition, 15 U.S.C. § 1125(a)(1), a plaintiff must show three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards").

[7] Plaintiff disputes the validity of Defendants' legal arguments, however I need not decide this issue here, because I deny Defendants' Motion on other grounds.

SERIOUS products in New Jersey and Pennsylvania in 2006. Perez Aff. at ¶ 2.[8] Importantly, Defendants have not produced any evidence to disprove Plaintiff's claim that he marketed his DEAD SERIOUS products in the United States, in 2005, before Defendants' first use of the mark. Indeed, Defendants rely entirely on the date that Plaintiff registered his DEAD SERIOUS mark with the PTO, April 23, 2008, to claim that they have prior use of the mark. Viewing this limited evidence in the light most favorable to Plaintiff, Plaintiff has demonstrated that there is a question of fact as to whether Defendants are the senior users of the DEAD SERIOUS mark in New Jersey and Pennsylvania.

Second, regarding customer confusion,[9] Defendants have submitted no evidence in support of their assertion that Plaintiff only sells his products in Australia. Conversely, Plaintiff has

---

[8] Plaintiff contends that Defendants are precluded by *res judicata* from claiming that they are the senior user of the DEAD SERIOUS mark, because Defendant Lourdes Perez' Petition for Cancellation, which was based on the same claim, was denied with prejudice by the TTAB. *See* Ludwig Aff. at Ex. 7. However, I need not decide this issue here, because Plaintiff does not move for summary judgment in his favor on this basis. Instead, I deny Defendants' Motion on other grounds.

[9] Courts consider a variety of factors when assessing whether two marks are likely to cause consumer confusion. In the Third Circuit these factors include, but are not limited to

> (1) the degree of similarity between the owner's mark and the allegedly infringing mark;
> (2) the strength of the owner's mark;
> (3) the price of the goods and other factors indicating the care and attention one expects would be given when making a purchase;
> (4) the length of time the alleged infringer has used the mark without evidence of actual confusion arising;
> (5) the intent of the alleged infringer in adopting the mark;
> (6) the evidence of actual confusion;
> (7) whether the goods are marketed through the same channels;
> (8) the extent to which the target markets are the same;
> (9) the perceived relationship of the goods, whether because of their near-identity, similarity of function, or other factors; and
> (10) other facts suggesting that the prior owner might be expected to expand into the alleged infringer's market.

submitted both an affidavit stating that he currently sells his products in the United States, as well as website visitation records, demonstrating that customers located in the United States, including customers located in Pennsylvania and New Jersey, have visited Plaintiff's online storefront. Cauchi Aff. at ¶¶ 6-8, Ex. C. Moreover, regarding whether the parties' product lines are too dissimilar to engender customer confusion,[10] Plaintiff submits an affidavit stating that he markets and sells generally sports-themed clothing and accessories under the DEAD SERIOUS name, rather than, as Defendants claim, solely paintball-themed clothing and supplies. Cauchi Aff. at ¶¶ 2, 4, Ex. B. However, even accepting that Plaintiff's products are limited to paintball-themed clothing and supplies, a finder of fact could still reasonably find that the parties' product lines are similar enough that they would engender customer confusion. For example, both parties include in their product lines simple t-shirts with their respective DEAD SERIOUS logos, which arguably could be marketed to both paintball enthusiasts and MMA enthusiasts alike. *See* Defs. Mem. of Law in Supp. of their Mot. for Summ. J. Ex. I; Cauchi Aff. at Ex. B. Thus, considering these limited facts in the light most favorable to Plaintiff, there is clearly, at the very least, a dispute of fact as to whether there is a likelihood of customer confusion.

---

*Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 319 (3d Cir. 2015). Because there has been no discovery in the instant matter, there is presently no evidence before the Court as to the majority of these factors.

[10] Plaintiff contends that Defendants are precluded by *res judicata* from claiming that there is no likelihood of customer confusion, because Defendant Lourdes Perez' previously argued in his Petition for Cancellation before the TTAB that cancellation was necessary due to the likelihood of consumer confusion between Plaintiff's registered DEAD SERIOUS mark and Defendants' DEAD SERIOUS mark. *See* Ludwig Aff. at Ex. 7. However, I need not decide this issue here, because Plaintiff does not move for summary judgment in his favor on this basis. Instead, I deny Defendants' Motion on other grounds.

11

Accordingly, because disputed material facts exist in this matter, summary judgment is not appropriate. The parties are directed to pursue discovery.

### IV.     Conclusion

Defendants Motion for Summary Judgment is denied without prejudice.

Date: July 11, 2016

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. District Judge
